IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY E. PERKINS,<br><br>   Petitioner,<br><br> vs.<br><br>JAMES A. YATES, Warden,<br><br>   Respondent.<br>_____ / | No. C 08-00950 CRB (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

  On February 25, 2004, petitioner was charged in Alameda County Superior Court with spousal rape, Cal. Penal Code § 262(a)(1), sexual penetration by a foreign object, Cal. Penal Code § 289(a)(1), forcible oral copulation, Cal. Penal Code § 288a(c)(2), and false imprisonment by violence, Cal. Penal Code § 236. The information also alleged that petitioner had suffered a prior "strike" felony conviction and two other priors.

  On January 4, 2005, petitioner was found guilty by a jury of spousal rape and sexual penetration by a foreign object. He admitted the three prior convictions.

  On February 23, 2005, the court sentenced petitioner to an upper 16-year term (doubled pursuant to the prior strike) for spousal rape, a concurrent 16-year term (double pursuant to the prior strike) for sexual penetration with a foreign object, plus a consecutive five-year term for one of the prior convictions, for a total sentence of 21 years in state prison.

Petitioner appealed on the ground that the trial court erred in refusing to allow him to discharge his retained attorney.

On August 11, 2006, the California Court of Appeal affirmed the judgment and, on October 18, 2006, the California Supreme Court denied review.

On February 14, 2008, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. Per order filed June 23, 2008, the court found that the petition, liberally construed, stated a cognizable claim under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer to the order to show cause and petitioner filed a traverse.

## BACKGROUND

The California Court of Appeal summarized the relevant procedural background of the case as follows:

> On August 6, 2004, the court relieved [petitioner's] public defender and [petitioner] retained Melina Burns as his counsel. Burns appeared on [petitioner's] behalf on October 4 and 6, and December 6, 2004. On December 6, [petitioner] informed the court that he would not accept the prosecution's proposed plea agreement. The court indicated it was going to call in a jury panel and proceed to trial on December 8. [Petitioner] did not raise any issue about Burns's representation of him, or his desire to discharge her, on this date.
>
> ***[Petitioner's] Efforts to Obtain Leave to Discharge His Counsel at the December 8, 2004 Hearing***
>
> On December 8, the trial court held a hearing with [petitioner] and his counsel, Burns, to consider [petitioner's] request that Burns be discharged. [Petitioner] told the court that Burns did not think they could win, had not properly investigated the case, had not done certain things at his request, failed to visit him for any length of time at the jail, and wanted him to accept an unfair plea agreement.
>
> The trial court indicated its disfavor with [petitioner's] request, noting, among other things, that the case was almost a year old and had been sent to trial court, that 75 to 80 potential jurors were waiting downstairs, and that this was the first time [petitioner] was raising any concerns about Burns. When [petitioner] complained that Burns had not brought him back into court two days before, on December 6, so that he could express his concerns, the court indicated that would have made no difference because he already had been in a trial court.
>
> [Petitioner] contends on appeal that he told the trial court that he also had talked to Burns about making a discharge motion before December 6 and was told that they should "put it off" until December 6. In response to the court's statement that [petitioner] had not raised the discharge issue before, [petitioner] stated that

2

he had tried to talk to Burns the last time they had gone to court prior to December 6 and had been told to put "it" off for December 6. It is not entirely clear what [petitioner] meant by "it," however. [Petitioner] also stated that he had told Burns in this same exchange that she needed to come out and talk to him.

[Petitioner] pursued certain issues about Burns's representation before the court. He contended that Burns had not pursued a list of witnesses that could help establish his spouse's tendency to lie, which list he contended Burns had received in files turned over to her by [petitioner's] previous counsel. After Burns told the court that she had not heard before of people who could testify on his behalf, [petitioner] stated that he had written four or five letters to Burns. Burns indicates these letters did not contain "names of witnesses who could help him."

Second, [petitioner] complained that Burns had not visited him in jail enough to sufficiently prepare his case. He indicated he had asked Burns to visit him, but that Burns had only visited when she was first paid, and subsequently for a couple of minutes to discuss money. Burns indicated she had visited him "[m]aybe three times." The court noted that counsel had already appeared on [petitioner's] behalf on three prior occasions, and had four months to prepare the defense.

Third, [petitioner] indicated that counsel should have filed a certain pretrial evidentiary motion, but the court indicated such a motion was inapplicable to the case.

The court asked Burns if she was ready for trial, and Burns responded, "With what I have, yes, Your Honor." The court then ruled that they would proceed to trial, telling [petitioner] "all of this should have been addressed before you got sent to a trial court ."

Despite the court's ruling, [petitioner] continued to insist to the court that he wanted to "fire" Burns. After additional discussion, the trial court stated:

"I will point out to you that you are in a trial court. Your motion to discharge your attorney is ill-timed in that the District Attorney has witnesses subpoenaed for today's trial date and you do not have a replacement attorney here in court to take up and try the case. There is case law which says it would be error for me to relieve counsel at trial unless there is another attorney available who's ready to try the case and that therefore any motion made to relieve counsel when sent to a trial court is belated. That is one of the motivating factors in which I am denying your motion."

[Petitioner] responded for the record that the court did not give him a chance to show that his attorney did not come to visit him, and that she did not subpoena witnesses who could testify on his behalf.

The court stated that, because trial testimony would not start for some time, there was "ample time for your attorney . . . to subpoena these witnesses to testify." [Petitioner] then stated, "[i]f you ordering her, then I'll feel comfortable." The court then ordered Burns to discuss with [petitioner] the witnesses [petitioner] wished to call "and for her in her good judgment to determine whether or not their testimony would be relevant and admissible. If she so determines, then she is ordered to complete a full investigation to present a competent defense on your behalf." [Petitioner] thanked the court and did not pursue his objections to counsel further at the hearing.

3

However, Burns stated that she could not "let my client try to portray my representation as less than adequate" without addressing the issue. She stated that [petitioner] had abused the privilege of calling her office carte blanche without limitation or cost, that she had wanted to visit him in an appropriate manner, and that she had stopped because "I felt that he was being abusive and misrepresenting the facts to me." She stated that she had "been conducting a competent defense[.]" The court responded that it was making no findings about her representation at that point, and that its purpose was to "ensure that [petitioner] has a competent defense from here on in."

### *The December 9, 2004 Hearing*

On December 9, [petitioner] again asked to address the court regarding his attorney. He stated that "I feel like I'm fighting for my life, I should have a counsel that wants to be here and wants to help me win this case, and I don't feel like I have it with Ms. Burns here." After repeating his contention that Burns had not sufficiently conferred with him to develop his case, [petitioner] complained that Burns had moved the prior day at a hearing on pretrial evidentiary motions to exclude evidence of his prior sex offenses when he had no such convictions, and that she had lied about not having a list of his criminal record.

The court responded that Burns had "misspoke" about [petitioner]'s prior offenses and that the issues [petitioner] was raising had no impact on his defense. The court asked Burns how many times she had visited [petitioner], and she answered that to the best of her recollection it was two or three times. [Petitioner] stated this was not true. The court then referred to the previous day's discussion, and stated that if [petitioner] had another attorney ready to try the case, the court would allow a substitution. The court repeated its grounds for denying [petitioner]'s motion to discharge Burns. [Petitioner] stated that this was their first court date together; the court responded that this was not true. [Petitioner] claimed that at a previous court date Burns only "hollered at me" about money. The court repeated its view that [petitioner]'s motion was too late, and asked Burns if she wanted to respond to [petitioner]'s allegations. Burns stated that she had had "substantial difficulty" with [petitioner] over payment, at one point being offered a television as payment or collateral, and had been misled and manipulated.

The court indicated that neither Burns nor [petitioner] had brought up any of their issues in a timely fashion. It repeated its ruling on [petitioner's] motion, and indicated again that the trial schedule gave the defense three weeks to interview witnesses, take statements, and discuss testimony. The court stated, "I am not going to jeopardize a trial court or the District Attorney's case suddenly because you decide you do not want to have Ms. Burns as your attorney, never having brought it up before and you don't have anybody ready to try the case."

[Petitioner] continued to argue, contending that Burns would not share information with him about witnesses, to which Burns stated additional time to subpoena witnesses was not an issue.

Burns stated that the "only issue" was that she was "slightly delayed in making sure that I had all motions in limine and pretrial motions filed." However, she stated that she was not asking for a continuance, and that she had no subpoena or factual problems. The court told her that any financial issues should have no impact on her preparation or presentation of the defense case.

4

/
*The December 13, 2004 Hearing*

On December 13, in another in camera session, [petitioner], through Burns, requested a referral to the public defender's office as an indigent. The court stated that the request was late. Once more, [petitioner] contended he was not able to previously raise the issue. The court ruled otherwise, finding that Burns had been his counsel of record for a number of months, had appeared more than once on his behalf, and that [petitioner] could have written to a judge before trial about his concerns, but did not.

[Petitioner] stated that his counsel did not want to represent him and thought he was guilty. The court stated that "if at any time during the proceedings I perceive that Ms. Burns is not competently and adequately and intelligently representing you I will call a halt to the proceedings and reconsider . . . I will monitor it very carefully."

*Evidentiary Motions*

The parties discussed various evidentiary motions with the court prior to trial. [Petitioner] contends on appeal that Burns's performance regarding these motions clearly shows she was unprepared for trial. We discuss these contentions further in the discussion section, post.

*The Trial*

At trial, the parties did not dispute that [petitioner] and his spouse, who were married but separated at the time, met alone at a motel on December 13, 200[3], went on errands together, returned to the motel, ate seafood, revealed certain information to each other and drank some vodka while playing a card game called "The Truth," and that sex between them then occurred. They also did not dispute that in May 2002, spouse had given a statement to police that [petitioner] had physically attacked her, which led to his arrest. She had changed her story later at a preliminary hearing, which led to [petitioner's] release.

The prosecution, relying largely on the spouse's testimony, contended that [petitioner] raped his spouse at the motel on December 13, 200[3], after he became angry when she disclosed during their playing of "The Truth" that she was dating someone else; that she had tried, but had been prevented by [petitioner] from leaving the motel room; and that she had repeatedly told him that she did not want to have sex with him and/or asked him to stop.

[Petitioner] testified on his own behalf. He said that he had told his spouse that she needed to have sex with him in order to receive money that she had asked of him, and that they had then engaged in consensual sex, after which he told her that he would not give her any money and left. His defense relied significantly on the contention that his spouse was lying, and that she was prone to lying. Among other things, [petitioner's] defense emphasized his spouse's previous report to police in May 2002 that he had physically abused her, a charge which she later retracted.FN1

> FN1. Spouse testified at trial that she had not told the truth at the preliminary hearing about the May 2002 incident. She said that she had done so because she did not want [petitioner] to go to jail, since he had promised that he would get some help, move out, and leave her alone.

5

> [Petitioner] waived his right to a jury trial on the prior conviction allegations and admitted their truth. The jury convicted [petitioner] of spousal rape and penetration with a foreign object, but acquitted him of the oral copulation and false imprisonment charges. [Petitioner] received a 21-year sentence, comprised of an upper term for spousal rape, doubled because of a prior strike, to 16 years; a concurrent 16-year term for sexual penetration with a foreign object; and a consecutive five-year term for a prior conviction. He subsequently filed a timely notice of appeal.

People v. Perkins, No. A109505, 2006 WL 2329434, at **1-5 (Cal. Ct. App. Aug. 11, 2006) (footnote and subheadings in original).

## DISCUSSION

### I.   Standard of Review

This court may entertain a petitioner for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case different than [the] Court has on a set of materially indistinguishable facts." William v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law as "objectively unreasonable." Id. at 409.

The only definite source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 311 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

## II.   Claim & Analysis

Petitioner claims that he was denied his Sixth Amendment right to counsel of choice by the trial court's refusal to allow him to discharge his retained attorney, Melina Burns. The claim is without merit.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-35 (1989). The erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error. United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006). A violation of the Sixth Amendment right to counsel of choice is not subject to harmless-error analysis. Id. at 152.

7

The Supreme Court has emphasized, however, that the right to counsel of choice is "circumscribed in several important respects." Wheat v. United States, 486 U.S. 153, 159 (1989). Indeed, there are four specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have a right to be represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent the defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself) who is not a member of the bar. Id. In addition, the Court has established that the trial court requires "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152 (citation omitted). As such, trial courts retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." Id.

The California Court of Appeal rejected petitioner's Sixth Amendment claim on the ground that "[n]othing in the record indicates that the [trial] court was required to grant [petitioner's] request in order to preserve his constitutional rights to counsel." People v. Perkins, 2006 WL 2329434, at *5. The court explained:

> . . . The trial court reasonably concluded that Perkins's December 8 motion to the court was untimely. Perkins made his motion on the first day before the trial court, when the court had already gathered potential jurors and the prosecution had subpoenaed witnesses. (See *People v. Courts* (1985) 37 Cal.3d 784, 792, fn. 4 [referring favorably to appellate court denials of "eve-of-trial, day-of-trial, and second-day-of-trial requests" for continuances to obtain counsel based on the lateness of the request, "which justified a denial where there were no compelling circumstances to the contrary"].) Burns stated that she had been competently defending Perkins and was ready to proceed with the trial. Perkins had no substitute for his counsel, and granting his request obviously would have required a continuance. When Perkins complained that Burns had not interviewed or subpoenaed witnesses that would help his case, a contention to which Burns did not necessarily agree, the court determined that in any event Burns had sufficient time to do before presenting a defense at trial, and ordered her to confer with her client about possible witnesses. Clearly, the orderly and expeditious administration of justice was served by the trial court's exercise of its discretion to deny Perkins's request. (Cf. *People v. Turner* (1992) 7 Cal.App.4th 913, 919 [motion properly denied on the first day of trial]; *People v. Lau* (1986) 177 Cal.App.3d 473, 479 [same]; *People v. Murphy* (1973) 35 Cal.App.3d 905, 915-916 [before and on day of trial]; *People v. Johnson* (1970) 5 Cal.App.3d 851, 858-859 [same].)

Perkins argues that his request to discharge counsel was not untimely under the circumstances because his "earlier attempts to discharge counsel had been thwarted by retained counsel herself." He contends, as already noted, that he had previously raised the discharge issue with counsel on December 6, and as far back as an October 6 court appearance. If in fact Perkins wanted new counsel as early as October 6 (as already noted, the record is not entirely clear on this point), he nonetheless fails to adequately explain his failure to raise the issue, such as by a writing, to the court. Burns's purported advice that Perkins wait to raise the issue before the court hardly "thwarted him" from doing so if he truly wished to obtain new counsel. Furthermore, there is no indication that Perkins ever sought other possible counsel. Instead, the record indicates that he continued to work with Burns after October 6, including through the December 6 court hearing and their unsuccessful plea negotiations with the prosecution. Thus, there is a serious question about the extent of his desire to replace Burns prior to December 8. Regardless, even by his own account, Perkins did not do anything to obtain Burns's discharge other than discussing it with her. This is not sufficient for us to find that the trial court acted outside of its discretion in determining that his request was untimely.

Perkins, relying heavily on *Bland v. California Dept. of Corrections* (9th Cir.1994) 20 F.3d 1469 (*Bland*) (overruled on other grounds in *Schell v. Witek* (9th Cir.2000) 218 F.3d 1017, 1024-35), also argues that he was prejudiced by Burns's purported lack of preparation for trial. In *Bland*, the Ninth Circuit determined that, under California law, a trial court has the discretion to deny an eve-of-trial motion to discharge retained counsel where a substitution would require a continuance, but found the record did not support a finding of untimeliness under the circumstances of that case. (*Bland*, at p. 1476.) In essence, the privately retained defense attorney twice failed to appear for trial. The court held counsel in contempt and ordered a bench warrant issued. When counsel appeared in court a few days later, on the eve of trial, he stated that he was not ready for trial and requested the appointment of a public defender. The trial court denied the request to discharge the defense counsel, improperly doing so summarily without making the requisite inquiry. (*Id.* at pp. 1474-1476.) Perkins contends that Burns was as unprepared as the lawyer in Bland. Putting aside that *Bland* is not controlling California authority (see *People v. Bradley* (1969) 1 Cal.3d 80, 86), we review Perkins's specific contentions.

First, Perkins contends that Burns failed to pursue witnesses who could have testified about the spouse's character for untruthfulness. Perkins ignores his December 8 statement to the court that he was "comfortable" after the court explained that the defense still had ample opportunity to pursue potential witnesses and ordered Burns that she discuss the matter with him. Perkins also ignores Burns's subsequent indication to the court that she did not need additional time to subpoena witnesses.

The trial record also does not support Perkins's contention that Burns failed to present important witnesses for the defense. The defense did not begin presenting its case until 20 days after Perkins raised the issue. Perkins does not point to anything in the record which indicates that Burns failed to comply with the court's order to discuss with Perkins his list of potential witnesses during that time. Furthermore, Burns pursued the issue of the spouse's credibility, cross-examining the spouse regarding

9

her inconsistent statements to authorities regarding the May 2002 domestic incident with Perkins, and argued in closing that the spouse was dishonest.  We see no reason why Burns's unwillingness to pursue witnesses Perkins may have suggested establishes that she was unprepared for trial, particularly when Perkins's comments to the court indicate that he did not always understand legal matters, such as when the court informed Perkins that an evidentiary motion he insisted Burns should have filed was inappropriate.

Perkins next contends that the record of Burns's participation in the hearing of various pre-trial evidentiary motions demonstrates that she was unprepared for trial, despite her representations to the court.  First, regarding the prosecution's request to admit evidence of a prior conviction pursuant to *People v. Poplar* (1999) 70 Cal.App.4th 1129, Burns asked the court not to rule on the matter because she was "not finished researching this one and I'd ask for a little bit of time on this one."  The court passed on the motion to give counsel further time.  At hearing the next day, Burns reported that she had read the case law and that it was on point, conceding the admissibility of the convictions.  The court granted the prosecution's motion.  Perkins argues that the record shows Burns did not read the case cited by the prosecution.  Burns's comments do not indicate that she failed to read the case cited by the prosecution, but only that she won a slight delay in the court's ruling so that she could pursue her research in opposition to the motion.

Second, regarding the prosecution's motion to admit certain prior convictions for acts involving moral turpitude for impeachment purposes, Burns stated that she did not "have a complete list of his prior felony convictions, and I wanted to make sure that I have an accurate list of the dates and the nature of those convictions."  The court ordered the prosecution to provide a list to Burns, and indicated that its tentative rule was to admit the evidence.  Notably, Perkins does not contend that the evidence was inadmissible.  Again, the record indicates that Burns was seeking every opportunity to review all of the material pertinent to a motion made by the prosecution, and not necessarily that she was unprepared for trial.

Third, Perkins contends that Burns performed incompetently regarding two motions dealing with the spouse's sexual conduct.  Regarding the prosecution's motion to exclude evidence of the spouse's sexual conduct with individuals other than Perkins, Burns indicated that the defense did not intend to introduce such evidence and the court granted the motion.  Perkins stated that it was not appropriate because Burns did not know what kind of evidence he could show her.  The court indicated it would be happy to reconsider the ruling, if necessary, after Perkins discussed his evidence with Burns and presented additional theories under which they might wish to proceed.

Furthermore, regarding the prosecution's motion to exclude any evidence that the spouse may have considered having sex with Perkins and another individual for monetary consideration, Burns indicated that she had "not discussed an issue of the three-way relationship, as to how it would bear on the case at all."  The court then granted the motion to exclude, unless the defense came up with competent evidence that it was contemplated and communicated by the spouse, and was relevant to the charges.

10

1  Perkins's arguments that Burns's failure to pursue these matters shows she
    was unprepared for trial are unpersuasive.  Counsel is not obligated to
2  pursue every issue that her client might believe to be useful.  Burns's
    representations that she was ready for trial and that she did not have an
3  issue with pursuing additional witnesses indicate that she did not consider
    pursuing the spouse's sexual conduct with others to be useful to the
4  defense.  Perkins fails to explain on appeal how they would have aided
    his cause any more than the defense Perkins did provide at trial, which, as
5  we have already discussed, included an attack on the spouse's credibility.

6  Fourth, regarding the defense motion to exclude Perkins's statement to his
    spouse during a recorded telephone conversation, Burns stated that she
7  was relying on Penal Code sections 630 to 637.5.  The court recalled a
    code section that allowed in such a recorded conversation for the
8  purposes of ascertaining past unreported sexual conduct, and asked the
    prosecution to have the code section available the next day.  The next
9  day, the court denied the defense motion to exclude the recorded
    conversation between the spouse and Perkins because, among other
10 things, one of the statutes contained in Burns's supporting citation, Penal
    Code section 633.5, allowed for the admission of such a recording.  Once
11 more, the record indicates only that Burns made an effort to oppose the
    admission of evidence that was admissible.  Perkins fails to show what
12 Burns could have done otherwise to exclude the statement.  Notably, he
    does not contend that Burns's citation was incorrect.
13
    Fifth, regarding a defense motion, the court noted that Burns had filed a
14 motion to exclude evidence of alleged prior sexual offenses by Perkins,
    but that the prior offenses involved burglary and spousal battery, but not
15 sexual offenses.  Burns indicated the subject matter was the same as the
    prosecution's motion regarding certain prior convictions, for which the
16 court had granted counsel further time to consider, and suggested the
    court take up the motions at the same time.  The court agreed to do so.
17 Clearly, Burns misstated the nature of Perkins's prior offenses.
    However, the fact remains that Burns had prepared the motion to exclude
18 the convictions.  As already indicated, Perkins fails to show what else
    Burns could have done to prevent the admission of this convictions.  Her
19 misstatement, while unfortunate, is not sufficient to establish that she was
    unprepared to adequately defend Perkins.
20
    Finally, Perkins complains that counsel frankly conceded that her
21 financial negotiations with Perkins had " 'slightly delayed' her in 'making
    sure [she] had all motions in limine and pretrial motions filed.' "
22 However, Perkins does not point to anything that was affected by this
    slight delay,FN2 nor does the record suggest this was the case.  To the
23 contrary, the record of the trial indicates that Burns was adequately
    prepared to defend Perkins. Notably, Perkins does not raise any issues
24 about Burns's conduct during the trial itself.

25       FN2. Perkins also refers to his complaints before the trial court
         that Burns had not visited him sufficiently prior to trial.
26       However, Perkins does not point to anything which indicates that
         Burns failed to meet with him or otherwise discuss the case so as
27       to jeopardize the defense in any way.

28 Having carefully reviewed the record, we see nothing that supports the
    contention that Burns was not prepared to adequately defend Perkins at

11

> trial. Perkins fails to demonstrate how his situation is comparable to that found in *Bland*, supra, 20 F.3d 1469. We conclude that the trial court acted within its discretion to deny Perkins's motion to discharge Burns.

People v. Perkins, 2006 WL 2329434, at ** 6-9.

The California Court of Appeal's rejection of petitioner's Sixth Amendment claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The state trial court's decision not to discharge petitioner's retained counsel was not an unreasonable exercise of its discretion to balance petitioner's right to chose counsel against concerns of fairness and scheduling. See Gonzalez-Lopez, 548 U.S. at 152. Three factors support this conclusion.

First, at the time petitioner moved to discharge Burns, petitioner had not retained another attorney to replace her and there was no indication of how much time a new attorney, once hired or appointed,[1] would have needed to prepare for trial. Granting petitioner's request certainly would have required a significant postponement of trial. See Miller v. Blacketter, 525 F.3d 890, 896 (9th Cir. 2008) (not having substitute counsel ready to proceed immediately supports trial court's decision to deny petitioner's choice of counsel).

Second, petitioner did not move to discharge Burns until December 8, 2004, the first day before the trial court, when the court already had gathered potential jurors and the prosecution had subpoenaed witnesses. The Supreme Court has held that only a trial court's "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay "violates the Sixth Amendment, and has emphasized the timing of the defendant's motion in analyzing such trial court decisions. Id. at 897 (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)) (internal quotation marks omitted). The trial court's determination that petitioner's motion was untimely cannot be construed as an unreasoning and arbitrary insistence upon expeditiousness in the face of a

---

[1] Under California law, "a court must not consider whether a defendant is indigent and will require appointment of counsel in ruling on his motion to discharge retained counsel." People v. Ortiz, 51 Cal. 3d 975, 987 (1990).

12

justifiable delay. See id. at 898. Nor can it be said that the state courts unreasonably rejected as unpersuasive petitioner's claim that his earlier attempts to discharge counsel had been thwarted by retained counsel herself. After all, the record indicates that petitioner worked with Burns and made no efforts to obtain other possible counsel until he sought to discharge her on December 8, 2004.

Third, the trial court reasonably concluded that Burns was sufficiently prepared to proceed to trial. Under circuit precedent, the trial court had a duty to inquire into the problems between petitioner and Burns once raised. See Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc). The trial court conducted such an inquiry and afforded both petitioner and Burns an opportunity to explain the cause of petitioner's dissatisfaction. The gravamen of petitioner's expressed dissatisfaction was that Burns was "ill-prepared to proceed." Among other things, petitioner complained that Burns had failed to pursue witnesses who could testify about his wife's willingness to lie and had not sufficiently visited him in jail. He also complained of Burns's handling of certain pre-trial motions and her preoccupation with attorney's fees.

The trial court reasonably concluded that Burns was (or would be) prepared to try the case as scheduled. Although Burns expressed concern with petitioner over payment, she stated that she had been conducting a competent defense and never indicated that she was not prepared to proceed to trial. The court instructed Burns that financial issues should have no impact on her preparation or presentation of the defense case and ordered her to discuss the possible witnesses with petitioner and "complete a full investigation to present a competent defense" if she determines in her good judgment that their testimony would be relevant and admissible. Rep. Tr. at 30. The court also noted that Burns would have three weeks until she would be required to present her case – "ample time" to subpoena, interview and take statements from potential witnesses. Id. at 48. There is no indication that Burns failed to comply with the court's orders. Nor is there any indication that petitioner's other complaints – frequency of visits, handling of pre-trial motions and the like – showed that Burns was

ill-prepared to proceed to trial. Perhaps petitioner's complaints showed his dislike or distrust of Burns, but this is not enough to establish a violation of the Sixth Amendment. See Plumlee, 512 F.3d at 1210-11; Larson v. Palmateer, 515 F.3d 1057, 1066-67 (9th Cir. 2008). It is well-established that there is no Sixth Amendment right to a "meaningful relationship" between an accused and his counsel. Morris, 461 U.S. at 14.

Forcing a defendant to proceed to trial with an attorney with whom he has a serious conflict may also violate the Sixth Amendment. Petitioner is entitled under the Six Amendment to a representation that is free from conflicts of interest. Strickland v. Washington, 466 U.S. 668, 692 (1984). Nothing on the record suggest that petitioner's representation by Burns resulted in an actual or apparent conflict of interest. Cf. Plumlee, 512 F.3d at 1211 (holding that 6th Amendment not violated when a defendant is represented by a lawyer free of actual conflicts of interest, but within whom the defendant refuses to cooperate because of dislike or distrust). Nor does anything on the record suggest that this is was a case where a serious conflict resulted in the constructive denial of assistance of counsel (e.g., where the conflict between the defendant and his counsel became so great that it resulted in a total lack of communication). Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc). Petitioner does not argue (nor does the record show) a breakdown in communications such that the petitioner was effectively deprived of counsel. See id. at 1026.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

Dated: Nov 19, 2009

CHARLES R. BREYER
United States District Judge